United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, | No. CR 11-811 EMC (DMR) |
| Plaintiff(s), | **ORDER RE DEFENDANTS' MOTION TO COMPEL DISCOVERY ON SELECTIVE PROSECUTION** |
| v. | |
| HASAN IBRAHIM and MEDCHEM CORP., | |
| Defendant(s). | |

Before the court is the parties' joint discovery letter of February 8, 2013. [Docket No. 65.] The present dispute concerns Defendants Hasan Ibrahim and MedChem Corporation's request for discovery on selective prosecution. The court held a hearing on February 15, 2013. For the reasons set forth below, the court denies the motion.

**I. Background**

Defendant Ibrahim, a Muslim of Palestinian origin, was the owner and president of Defendant MedChem Corporation. MedChem exported chemicals, including hazardous materials, medical equipment, and diagnostics, to Constant Trading Activity ("CTA"), a business in Saudi Arabia. Ibrahim and MedChem are charged with several criminal offenses, including attempted

placement of destructive substances on an aircraft, 18 U.S.C. § 32(a)(2) and (8);[1] transportation of hazardous materials without shipping papers, 49 U.S.C. § 5124(c) and (d);[2] failure to file export information, 13 U.S.C. § 305; and attempt to smuggle goods, 18 U.S.C. § 554(a).[3] (*See generally* Superseding Indictment.) Specifically, the section 32(a) counts allege that Defendants "willfully attempt[ed] to cause to be placed in, upon, and in proximity to a civil aircraft used, operated, and employed in foreign air commerce, a destructive substance . . . , and otherwise cause[d] such aircraft to be made hazardous to use, likely endangering the safety of such aircraft." (Superseding Indictment ¶ 21.) The section 5124 counts allege that Defendants "willfully and recklessly offered for transportation hazardous materials . . . without shipping papers describing those materials, in violation of 49 C.F.R. §§ 172.101, 172.200, 172.202, and 172.204," and that they "willfully and recklessly offered for transportation hazardous materials in packages . . . without labeling the packages, in violation of 49 C.F.R. § 172.40." (Superceding Indictment ¶¶ 23, 25.)

## II. Defendants' Contentions

---

[1] Section 32, entitled "destruction of aircraft or aircraft facilities," states in relevant part that: [w]hoever willfully – . . . (2) places or causes to be placed a destructive device or substance in, upon, or in proximity to, or otherwise makes or causes to be made unworkable or unusable or hazardous to work or use, any such aircraft, or any part or other materials used or intended to be used in connection with the operation of such aircraft, if such placing or causing to be placed or such making or causing to be made is likely to endanger the safety of any such aircraft; . . . (8) attempts or conspires to do anything prohibited under paragraphs (1) through (7) of this subsection; shall be fined under this title or imprisoned not more than twenty years or both.
18 U.S.C. § 32(a).

[2] Section 5124 states, in relevant part, that:
(a) In general.--A person . . . willfully or recklessly violating this chapter or a regulation, order, special permit, or approval issued under this chapter shall be fined under title 18, imprisoned for not more than 5 years, or both; except that the maximum amount of imprisonment shall be 10 years in any case in which the violation involves the release of a hazardous material that results in death or bodily injury to any person.
. . .
(c) Willful violations.--For purposes of this section, a person acts willfully when–(1) the person has knowledge of the facts giving rise to the violation; and (2) the person has knowledge that the conduct was unlawful.
(d) Reckless violations.--For purposes of this section, a person acts recklessly when the person displays a deliberate indifference or conscious disregard to the consequences of that person's conduct.
49 U.S.C. § 5124.

[3] Because Defendants are not claiming that the government has subject them to selective prosecution for the section 305 or 554(a) counts, the court does not address the details of these claims.

Defendants claim that the government has selectively prosecuted Ibrahim, as well as his business, MedChem, "because [Ibrahim] is a Muslim . . . and is of Palestinian origin." [Docket No. 65 at 3.] Defendants present several arguments to support this claim and obtain discovery. First, they contend that reported cases do not disclose a single case in which a shipper similarly situated to Defendants was prosecuted for violations of sections 32(a) or 5124. Defendants also argue that the Federal Aviation Administration ("FAA") regularly resolves hazardous shipping regulation violations administratively, rather than through criminal prosecution. Finally, Defendants point to the FBI's July 2010 interview with Ibrahim. Defendants argue that the agents' line of inquiry dwelt for a significant period on Ibrahim's place of birth, religious activities, affiliations, and political beliefs, thus demonstrating that the government has targeted Ibrahim based on his national origin and religion. [Docket No. 65 at 8-10.]

### III. Legal Standard

The government has "broad discretion" when deciding whom to prosecute. *Wayte v. United States*, 470 U.S. 598, 607 (1985) (citations and quotation marks omitted). As long as a prosecutor has probable cause to believe that the accused committed an offense defined by statute, "the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (citation and quotation marks omitted). A "presumption of regularity" buttresses prosecutorial decisions, and "in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation and quotation marks omitted).

Nevertheless, prosecutorial powers are subject to constitutional constraints. *Wayte*, 407 U.S. at 608 (citation and quotation marks omitted). One of these constraints arises from the equal protection component of the Due Process Clause of the Fifth Amendment, *Armstrong*, 517 U.S. at 464 (citation and quotation marks omitted), which mandates that "the decision to prosecute may not be "'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,"'" including "the exercise of protected statutory and constitutional rights." *Wayte*, 407 U.S. at 608 (citation omitted) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962))); *accord Armstrong*, 517 U.S. at 464.

3

The requirements for a selective prosecution claim derive from "ordinary equal protection standards." *Armstrong*, 517 U.S. at 465 (citation and quotation marks omitted). The claimant must demonstrate that "the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* (citations and quotation marks omitted). "[D]iscriminatory purpose" means that the prosecutor "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610 (brackets in original) (citation and quotation marks omitted).

To obtain discovery regarding selective prosecution, a defendant must "produce some evidence that similarly situated defendants outside of [their national origin or religious group] could have been prosecuted, but were not." *Armstrong*, 517 U.S. at 469. This standard "is a 'rigorous' one." *United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th Cir. 2003) (quoting *Armstrong*, 517 U.S. at 468); *cf. id.* at 1071 ("Merely demonstrating that better evidence cannot be obtained without discovery does not suddenly render otherwise insufficient evidence sufficient."). Thus, in the present case, to obtain the requested discovery, Defendants must show that non-Arab or non-Muslim individuals, or entities associated with them, were not prosecuted under 18 U.S.C. § 32(a) or 49 U.S.C. § 5124, even though they could have been. *See Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1134 (9th Cir. 2011); *United States v. Arenas-Ortiz*, 339 F.3d at 1068. If Defendants meet this burden, the government "must assemble from its own files documents which might corroborate or refute" their selective prosecution claim. *Armstrong*, 517 U.S. at 468.

### IV. Discussion

Defendants direct the court to a handful of cases to support their contention that the government has engaged in selective prosecution in its section 32(a) and 5124 counts. [Docket No. 65 at 4-7 (citing *United States v. Mena*, 933 F.2d 19 (1st Cir. 1991); *United States v. Bradley*, 540 F. Supp. 690, 692 (D. Md. 1982); *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003); *United States v. Evertson*, No. A 05-63 CR, (D. Alaska 2005); *United States v. Sabretech*, 271 F.3d 1018 (11th Cir. 2001); *United States v. Shearer*, 479 F.3d 478 (7th Cir. 2007); *United States v. Silesia Flavorings, Inc.*, No. 03 CR 851 (N.D. Ill. 2004)).] In *United States v. Mena*, Edward Ramon Mena was prosecuted for and convicted of violating section 32(a) after hijacking a passenger plane and threatening to detonate a bomb if the pilot did not divert the plane to Cuba. 933 F.2d at 22-23. In

4

*United States v. Bradley*, the government prosecuted Martin Thomas Bradley under section 32(a) because he placed a bomb in his wife's suitcase before she boarded a plane. 540 F. Supp. at 691. In *United States v. Yousef*, Ramzi Yousef was convicted pursuant to section 32(a) for, *inter alia*, conspiring to place bombs on United States airliners. 327 F.3d at 77-80. In *United States v. Evertson*, Krister Sven Evertson was prosecuted for violating section 5124 after allegedly shipping sodium metal to another individual via UPS ground service.[4] *See* Everston Trial Br. at 2, *Evertson*, 2006 WL 4791758. In *United States v. Sabretech*, Sabretech, Inc. was prosecuted for violating sections 32(a) and 5124 for willfully placing destructive devices on the plane and willfully failing to train its employees in accordance with hazardous materials regulations, respectively, after its employees placed old oxygen generators on a commercial airliner. 271 F.3d at 1020-21. In *United States v. Shearer*, Kenneth Shearer was prosecuted and convicted under section 5124 for tampering with a marking, label, and placard required on display fireworks. 479 F.3d at 481.[5] Finally, in *United States v. Silesia Flavorings, Inc.*, the company and two if its employees, Ortwin Winter and Juan Carlos Rodas-Misa, were prosecuted pursuant to section 5124 for conspiring to transport by aircraft certain flammable liquid flavoring extracts without proper declarations, packaging, markings, and labeling. 2004 WL 419904, at *1 (N.D. Ill. Mar. 1, 2004).

Defendants do not clearly explain the import of these cases. [Docket No. 65 at 4-7.] The court assumes that Defendants cite them to make two points. First, Defendants appear to argue that because the government rarely prosecutes cases under sections 32(a) and 5124, their prosecution of Defendants must therefore be selective. Such an argument is inapposite. Infrequent prosecution does not demonstrate that Defendants were selected for prosecution on the basis of religion or national origin.

---

[4] Defendants incorrectly represent to the court that Evertson placed or attempted to place hazardous materials on a plane. [Docket No. 65 at 6.] Evertson shipped the materials by ground. Moreover, because Evertson allegedly shipped hazardous materials by ground, the government could not prosecute him under section 32(a). Endangering an aircraft is an essential element of that claim. *See* § 32(a).

[5] Defendants represent that Shearer transported fireworks by plane. [Docket No. 65 at 6.] However, nothing in the case indicates that Shearer used an airplane as opposed to any other method of transportation *See Shearer*, 479 F.3d at 481. If Shearer shipped hazardous materials by ground, the government could not prosecute him under section 32(a).

5

Second, Defendants argue that their case – prosecution under both section 32(a) and 5124 "for shipping materials in the ordinary course of business" – is out of step with other prosecutions. [Docket No. 65 at 5.] These cases do not illustrate that point. Defendants' attempts to compare and contrast themselves with these cases do not bear up under scrutiny. Although Defendants argue that the failure to prosecute *Everston* and *Shearer* under section 32(a) suggests selective prosecution here, it is quite possible that the defendants in those cases could not have been prosecuted under section 32(a) because their alleged actions did not involve endangering an aircraft. Similarly, nothing indicates that the flammable flavoring extracts at issue in *Silesia Flavorings* would have qualified as a hazardous material under section 32(a). *See Silesia Flavorings, Inc.*, 2004 WL 419904, at *1. Finally, although it is not explicitly addressed in the cases, it appears that the defendants, save possibly *Yousef*, were not discernably Muslim or of Arab origin. In short, these cases do not show that non-Muslim or non-Arabs similarly situated to Defendants could have been prosecuted, but were not.

Defendants also argue that they have been the victims of selective prosecution because the FAA did not pursue administrative actions against them and instead opted for criminal prosecution. In support of this argument, Defendants proffer that the FAA sought civil remedies against 2746 shippers, passengers, and carriers between 2005 and 2011 for violating hazardous shipping regulations. Of these civil enforcement actions, 1638 were against shippers, 23 of which allegedly were in the Northern District of California.[6] Defendants assert that "it appears none of the officers or owners of 22 of these 23 shippers had an Arabic name or a name associated with [Islam]." [Docket No. 65 at 8 (citing Thompson Decl. ¶¶ 4-5, Exs. 4-5, Jan. 16, 2013).] Again, this is not meaningful evidence of selective prosecution. That the FAA pursued administrative action against a number of shippers – purportedly 23 in the Northern District of California – but not against Defendants, does not show that Defendants were selected for prosecution due to their religion or national origin. Even assuming that every defendant in these actions was neither Muslim nor of Arab extraction, nothing in the data indicates the specific nature of the defendants' transgressions. It therefore is impossible for the court to determine whether the defendants in those actions could have

---

[6] The United States pointed out that Defendants were patently incorrect in their assumptions that these shippers were within the Northern District of California. [Docket No. 65 at 16 n.4.]

6

1 been prosecuted under sections 32(a) or 5124, let alone whether the defendants were similarly
2 situated to Defendants.

3       Finally, Defendants highlight the information about Ibrahim's national origin, religious
4 activity, and political beliefs collected by the FBI during conversations with him. However, taken in
5 context, the interview does not demonstrate selective prosecution. The voluntary interview took
6 place in conjunction with the execution of a search warrant at MedChem. It is not clear what
7 information was elicited by the agents' questions, as opposed to volunteered without prompting by
8 Ibrahim. The interview discusses Ibrahim's association with the Muslim Community Association of
9 the San Francisco Bay Area ("MCA"), which is where he apparently met his business partner. This
10 partner operates CTA, the Saudi-based entity with which MedChem primarily conducts its business.
11 The interview focuses primarily on MedChem and CTA's business practices. Given this context, as
12 well as the fact that Defendants were being investigated for shipping hazardous materials on
13 passenger planes, the court cannot say (and Defendants did not argue) that the agents improperly
14 interviewed Ibrahim about MCA's connections to well-known al-Qaeda operatives who attended or
15 spoke at MCA gatherings, or noted Ibrahim's political affiliations. Had Defendants produced some
16 evidence that similarly situated non-Arab or non-Muslim defendants could have been prosecuted but
17 were not, the contents of the FBI interview may have had some limited probative value toward
18 demonstrating selective prosecution. In this case, Defendants have produced no such evidence.

### V. Conclusion

20    Defendants have not produced evidence showing that similarly situated non-Arab or non-
21 Muslim defendants could have been prosecuted under 18 U.S.C. § 32(a) or 49 U.S.C. § 5124, but
22 were not. The court therefore denies Defendants' request for discovery into selective prosecution.

24    IT IS SO ORDERED.

26 Dated: February 15, 2013



_____
DONNA M. RYU
United States Magistrate Judge