MELINDA HAAG (CABN 132612)
United States Attorney

J.DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

PETER B. AXELROD (CABN 190843)
BRIAN J. STRETCH (CABN 163973)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6774
    FAX: (415) 436-7234
    Peter.axelrod@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 11-0811 EMC |
|     Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL |
|   v. | |
| HASAN IBRAHIM, | |
|     Defendants. | Hearing Date: September 18, 2013 |

After a one-week trial, a jury convicted defendant Hasan Ibrahim of all of the counts in the Superseding Indictment charging him with attempted placement of a destructive device in an aircraft, shipping hazardous materials without shipping papers, shipping hazardous materials without proper labels, failing to file export information, and attempted smuggling of goods. On July 12, 2013, he filed a Motion for Acquittal under Rule 29. The government now files this Opposition. For the reasons stated below, defendant's Rule 29 Motion should be denied in its entirety.

## I.      THE EVIDENCE AT TRIAL

This section provides a brief summary of trial evidence that relates to defendant's Rule

29 motion, as well as to his Rule 33 motion; it does not attempt to describe all of the evidence adduced at trial.  Additional facts supporting the government's responses to defendant's arguments are also set out in the relevant sections of this Opposition.

A.  **Defendant's Knowledge of the Rules Relating to Hazardous Materials and his Prior History Related to the Ordering and Shipment of Hazardous Materials**

Since the late 1990s, defendant operated a business, MedChem Corporation, that shipped chemicals, including hazardous materials, and other items to Saudi Arabia.  (*See* Testimony of Richard Ming (owner of freighter forwarder); Jimmy Yee (operations manager of freight forwarder); Saul Samucha (business park neighbor); Ex.482 (Power of Attorney Agreement)).  In the course of operating MedChem, defendant routinely ordered hazardous materials from manufacturers including Sigma Aldrich.

The government presented evidence that defendant was familiar with the hazardous properties of the materials he purchased and the rules relating to the proper shipment of those items.  For example, Jimmy Yee, the operations manager at MedChem's freight forwarder, World Air and Ocean Services (WAOS), described at least two instances in which hazardous materials were delivered from suppliers directly to WAOS without any advanced notice from defendant.  In each of those occasions, which occurred in 2002 and 2003, the hazardous materials arrived at WAOS in labeled hazardous material packaging, and WAOS arranged to ship those items on behalf of MedChem via ocean vessels.  For each shipment, defendant executed dangerous good declarations (e.g., shipping papers) that identified the materials as hazardous and attested that the materials were properly packaged and labeled.  *See* Ex. 478 (dangerous goods declaration).  Likewise, in a 2004 email, defendant acknowledged that certain hazardous material has to go on ocean vessel because it came with a label indicating that it could not go on a passenger aircraft.  Ex. 450; Stipulation No. 6.  Agents also located defendant's spreadsheets at MedChem – both in hard copy and from the computer – that predated the June 4, 2010 shipment and identified specific hazardous materials in red as hazardous.  (Testimony of Aram Crandall (FBI), Ex.109 (from 2007), Ex. 176 (from 2009)).

GOVERNMENT'S OPPOSITION TO RULE 29 MOTION
CR11-0811  EMC

2

Defendant admitted to law enforcement that he had received hazardous materials at his business and they came via ground transportation with hazardous material labels.  (Testimony of Charles Herren (FAA)).  Defendant also admitted that the hazardous materials came with Material Safety Data Sheets (MSDSs), which he knew were the instructions related to the items.  (Herren Testimony).  Defendant's receipt of MSDSs was corroborated by testimony and records provided by Sigma (*see* Testimony of Jim Sanders from Sigma and MSDSs), as well as from various MSDSs seized by the FBI during the execution of a search warrant at MedChem.  (Crandall Testimony, Ex. 40, 131, 136).

Defendant stated that he repackaged hazardous materials that he received by placing them into boxes without hazardous materials labels, and that he did so to expedite the hazardous materials through Saudi customs.  (Herren Testimony).  The fact that defendant took hazardous materials out of labeled hazardous materials boxes and repackaged them into unlabeled boxes was corroborated by his friend and office park neighbor, Saul Samucha.

**B.      Defendant's Responsibility for June 4, 2010 Shipment**

Defendant's direct and personal responsibility for the charged shipment came from, among others, the following acts: defendant ordered the hazardous materials for the shipment and directed that those materials be delivered to MedChem and not the freight forwarder.  (*See, e.g.,* Exs. 9, 23, 28, 37, 47, 75, 102 (Sigma Invoices), Ex. 327, 331 (Recorded Sigma calls)).  As the recorded ordering calls demonstrate, defendant was interested in knowing which materials were hazardous and he was advised of the associated hazardous material packaging and shipping fees.  Defendant received hazardous materials at MedChem that were part of the seized shipment.  At trial, ABF Freight representative Josh Lovan described how the sulfuryl chloride (Count 2) was transported from Sigma to defendant's neighbor Saul Samucha who signed for the shipment and later turned it over to the defendant. Ex. 35-1. The ABF records identified defendant as the person to contact for the shipment.  Defendant coordinated with the freight forwarder in the week leading up to the seizure to arrange for this shipment to go by air. (Yee Testimony).  According to Yee's uncontroverted testimony, defendant delivered the unlabeled boxes containing the hazardous materials to WAOS prior to shipment.  In a June 4, 2010 email, defendant instructed WAOS to send this shipment by air and provided WAOS with invoices that

expressly stated that the shipment did not contain any hazardous substances and grossly understated the cost of the Fisher distiller. (Ex. 524). Yee testified that, as matter of the parties' course of dealings, once he received the email containing the invoices (which WAOS was entitled to rely on under the Power of Attorney Agreement), defendant had taken all steps to cause MedChem's shipment to go on a flight to Saudi Arabia.

Defendant admitted that he oversaw the preparation of this shipment. (Herren Testimony).

## II.     LEGAL STANDARDS GOVERNING A DEFENDANT'S MOTION FOR ACQUITTAL UNDER RULE 29

Rule 29 of the Federal Rules of Criminal Procedure states in pertinent part that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). It is well settled that the test for determining whether there is sufficient evidence to overcome a Rule 29 motion is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gonzalez*, 528 F.3d 1207, 1211 (9th Cir. 2008) (citation omitted). In ruling on a Rule 29 motion, a district court must bear in mind that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969). All reasonable inferences are drawn in favor of the government. *United States v. Andrino-Carillo*, 63 F.3d 922, 924 (9th Cir. 1995), *cert. denied*, 516 U.S. 1064 (1996). Accordingly, "[t]he hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010).

## ARGUMENT[1]

## III.     THERE WAS SUFFICIENT EVIDENCE PRESENTED TO PROVE THE DEFENDANT ACTED WILLFULLY WITHIN THE MEANING OF EACH COUNT

### A.     The Government Proved Beyond a Reasonable Doubt That the Defendant Acted with the Requisite State of Mind

---

[1] To aid the Court's review, the government's brief tracks the defendant's numbering format contained in his brief.

1    The defendant asserts that each count required evidence that the defendant did something to

2    cause portions of the shipment to be improper, not merely that there was a problem with the shipment.

3    The government agrees. The evidence clearly establishes that the defendant affirmatively took steps to

4    cause the shipment to violate multiple statutes.  The fact that he ordered the subject materials, standing

5    alone, would not constitute a violation of the statutes of which he was convicted.  Rather, the fact that he

6    ordered the subject materials was one link in the chain of events that led to his personal responsibility

7    for the shipment.

8        **B.     The Defendant Personally Offered the Offending Boxes for Shipment**

9        The defendant emphasizes that there was no evidence presented at trial that proved that he

10   personally prepared the boxes that contained the destructive substances.  The government agrees that

11   there was no direct testimony on that point.  And yet, whether the defendant personally repackaged the

12   materials that he purchased is immaterial to the issue of his guilt.  The evidence demonstrated that: he

13   ordered the hazardous materials with knowledge that materials were hazardous, he delivered the boxes

14   containing those materials to the freight forwarder, and provided the freight forwarder with false

15   information in the emailed invoices about the contents of those boxes and the hazardous nature of

16   certain of the materials.  These facts alone, coupled with defendant's long-standing business of ordering

17   and shipping hazardous materials, provided the jury with ample evidence that defendant acted willfully

18   as charged.  Defendant's own admissions further highlight the evidence establishing willfulness – he

19   admitted that he oversaw the preparation of this shipment and concealed the hazardous materials in

20   unlabeled packaging to expedite their transit through Saudi customs.  The evidence of willfulness also

21   includes defendant's acts in relation to specific hazardous materials found in the shipment – he called

22   Sigma looking for the chloroacetonitrile, which was Count 1 (Ex. 327) and he received the sulfuryl

23   chloride, which was delivered to his neighbor.

24       **C.     The Defendant's Actions Constituted A Crime, Regardless of What Role the Son
                  Played**

25

26       The defendant asserts that because the government could not establish exactly what role the son

27   played in connection with the subject shipment, the defendant is automatically not guilty.  This

28   GOVERNMENT'S OPPOSITION TO RULE 29 MOTION
     CR11-0811  EMC

argument of course completely ignores the role the defendant played. As stated above, the evidence unequivocally established the defendant's personal responsibility for the shipment. Where, how, or when the son assisted his father in committing the crimes was not before jury. The jury was tasked with determining whether the evidence proved beyond a reasonable doubt that the defendant had personal responsibility for the shipment, regardless of what role the son played. If the son aided and abetted the defendant in the commission of the crimes, it was not for this jury to decide. If the evidence presented at trial established that the son, or anyone else, was the person who repackaged the hazardous materials from performance packaging in labeled boxes into bare-bones packaging in unlabeled boxes, it would not eliminate the significance of the defendant's personal role in knowingly deceiving the freight forwarders of the contents of the boxes.

### D. The Government's Motion to Dismiss the Corporation Prior to Trial Does Not Absolve the Defendant of His Personal Involvement

The defendant asserts that the government moved to dismiss against the corporation prior to trial and then attributed actions by the corporation to the defendant. That is simply not the state of the evidence. The evidence presented at trial specifically detailed the personal actions of the defendant in connection the subject shipment.

### IV. THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH THAT THE DEFENDANT TOOK A SUBSTANTIAL STEP TOWARD THE COMPLETION OF THE OFFENSES CHARGED IN COUNTS 1 – 9, 21, AND 22.

The defendant is charged in Counts 1 – 9, 21, and 22 with an "attempt" to commit a crime. To be found guilty of an attempt, the defendant must take a substantial step toward the completion of the charged offense. In addition, the government must establish that the crime will take place unless interrupted by independent circumstances. (*See* Jury Instructions Numbers 33, 50, and 51) The defendant asserts that there was no evidence presented that the defendant – or anyone else – took a substantial step toward the completion of the charged offenses. In addition, he advances the theory that the freight forwarder was not an "independent circumstance" that prevented the shipment from leaving the country, but rather their participation was a precondition to shipping.

The defendant misapprehends the government's theory presented at trial. The government's

GOVERNMENT'S OPPOSITION TO RULE 29 MOTION
CR11-0811 EMC

argument at trial tracked the evidence presented, namely, the defendant did everything required of him to offer the subject boxes for shipment.  He delivered the unlabeled boxes, provided the (false) invoices, and directed the freight forwarders to ship the boxes to Saudi Arabia by air.  He took not just a substantial step toward the completion of the offenses, but all the steps he could.  The independent circumstance that stopped the shipment was the arrival of law enforcement to intercept the shipment. Had law enforcement not intervened, there was no evidence to suggest that the defendant's shipment of the hazardous materials to Saudi Arabia would not have been perfected.

In support of his argument that no substantial step was taken, the defendant cites to Exhibit 524, an email from the defendant to the freight forwarders, in which he stated, "you will find the three Invoices to b (sic) Legalized."   The defendant argues that by asking the freight forwarders to "legalize" the shipment, he relied on them to follow all the rules for shipping hazardous materials overseas.  This would have required the freight forwarders to unpack the shipment, determine which materials were hazardous, repackage the materials in performance packaging, properly label the boxes, declare the hazardous materials on the shipping papers, and then ship some of the materials by boat.  That interpretation is simply implausible given the evidence presented at trial, particularly where the defendant lied to the freight forwarder about the existence of hazardous materials in the shipment.  The logical answer, as presented at trial, and argued by the government, is what Mr. Yee, the freight forwarder testified to:  what was meant by "legalize" the shipment in the email from the defendant to the freight forwarders was in fact a direction to obtain the proper stamps for entry in Saudi Arabia; it had nothing to do with a direction to properly packaging, labeling, and declaring hazardous material. The freight forwarders testified that it was the defendant's responsibility to properly identify the contents of the shipment to the freight forwarders, a responsibility clearly articulated in the parties' Power of Attorney Agreement.  (Ex. 482)  In this instance, the defendant did just the opposite – he intentionally lied about the contents of the boxes in an effort to expedite the shipment.

V.   **THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH THAT EACH SUBSTANCE CHARGED IN COUNTS 1 – 9 WERE "DESTRUCTIVE SUBSTANCES"**

A.   **A "Destructive Substance" is defined in 18 U.S.C. § 31(a)(3)**

GOVERNMENT'S OPPOSITION TO RULE 29 MOTION
CR11-0811  EMC

Without any legal authority, the defendant suggests that the definition of "destructive substance" is somehow meaningless because FAA fire safety investigator Dave Blake testified that newspaper might qualify as a "flammable" material.  Whatever the context of Mr. Blake's testimony, the defendant cannot simply render a statutory definition meaningless by force of his own unsupported argument.  For purposes of this Rule 29 motion, the relevant question is – is there sufficient evidence for a reasonable juror to find that the substances identified in Counts 1-9 meet the statutory definition of a "destructive substance" under 18 U.S.C. § 31(a)(3)?  For the reasons set forth below the answer is yes.

### B.    "Destructive Substances" is Variously Defined in the Case Law

The defendant argues that the term "destructive substances" has been applied to bombs and anthrax spores, but not the substances specifically alleged in the superseding indictment.  (Def. Mot. at 11)  The fact that there are no reported cases involving the specific substances charged in this case has no bearing on whether, as a factual matter, these substances meet the statutory definition of the term.  A statute is not invalid because it is applied to a new factual circumstance, and the defense cites no authority to the contrary.

### C.    The Materials Charged in Counts 1 – 9 are "Destructive Substances" Within the Meaning of 18 U.S.C. § 32(a)(2)

The defendant argues that none of the substances charged in Counts 1-9 qualify as "destructive substances" because the government's fire safety expert was unable to assign a numeric probability to the danger posed by each of these substances.  (Def. Mot. at 12)  The defendant's argument misses the mark for several reasons.  First, the argument properly construed is that there was insufficient evidence to establish that each of the nine substances was likely to endanger the safety of the aircraft.  There, as a factual matter, the defense has misinterpreted the evidence.  In his testimony, Mr. Blake identified the specific properties of each substance that qualified it as a destructive substance.  (Those properties were also identified in the MSDSs for these specific materials, which were admitted in evidence)  He also described the risks posed by a release of each of those substances given the circumstances of this particular shipment inside the cargo hold of a 747.  The risk of such a release was increased here

GOVERNMENT'S OPPOSITION TO RULE 29 MOTION
CR11-0811  EMC

8

because of the fact that the boxes were not labeled as containing hazardous materials and the boxes were not properly packaged.  The risks associated with those facts were established by the testimony of Mr. Blake, James Lobello from Lufthansa, who described the procedures for accepting and handling declared hazardous material for transportation, and Janet McLaughlin, the Deputy Director of the FAA's Office of Hazardous Materials Safety.

Second, the defense argument overlooks the totality of Mr. Blake's testimony, the requirements of the statute, the instruction as given, and the other evidence presented.  Mr. Blake testified that the presence of each of these substances did create a dangerous situation, although he stated that it was beyond his assignment to quantify what that risk was.  If credited by a juror, his testimony alone supported the jury's verdict.

### D.   The Materials Charged in Counts 3 – 9 are "Destructive Substances" Even if They Are Permitted to be Transported by Air in Some Circumstances

The defendant argues that the substances charged in Counts 3-9 cannot qualify as "destructive substances" because under certain circumstances they are allowed to be transported by air under applicable hazardous materials regulations. (Def. Mot. at 12-13)  The defense cites no authority for that claim, and it reflects a failure to confront the evidence presented in this case.  The evidence established that each of the charged substances presented a danger based, among other reasons, on the inherent properties of the material, on the way the material was packaged in non-conforming packaging without the required protective components and without hazardous material labels on the exterior of the box, and in proximity to other hazardous materials.  In other words, none of the circumstances that would permit the transport by air of the materials identified in Counts 3-9 were present.  Further, the defendant's argument is absurd – it would mean that if the defendant transported 10 liters of highly flammable acetonitrile (the quantity in this case) in ziplock sandwich baggies it could never serve as the basis of a prosecution under § 32.

## VI.   THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH THAT THE DEFENDANT KNEW THAT THE MATERIALS IN THE SHIPMENT WERE DESTRUCTIVE SUBSTANCES.

The defendant argues that the government presented no evidence to prove that he knew that the

GOVERNMENT'S OPPOSITION TO RULE 29 MOTION
CR11-0811  EMC

materials alleged in Counts 1 through 9 were destructive substances within the meaning of the charged offenses.  The defendant is incorrect.  The evidence established that the defendant had ample knowledge of the properties of the chemicals in the seized shipment.

For the purposes of this case, a "destructive substance" includes "any explosive substance, any flammable material, or any chemical matter of a combustible, contaminative, corrosive, or explosive nature."  (*See* Jury Instruction No. 34).  Each of the chemicals charged in Counts 1 through 9 contained properties that fall within the definition of a destructive substance.

Herren testified that the defendant admitted that he received MSDSs when ordering and receiving hazardous materials.  The MSDSs described the hazards and shipping restrictions of each chemical.  Mr. Sanders from Sigma Aldrich testified that Sigma sent MSDS to their customers for each of the chemicals shipped.  The MSDS for the chemicals charged in Counts 1 through 9 were admitted into evidence as Exhibits 15, 36, 41, 97, 118, 537, 131, 136, and 56 respectively.

In addition, the labels attached to the boxes that the defendant received from the distributors provided notice to him of the hazardous properties of the chemicals.  Mr. Sanders testified that his company properly affixed DOT hazard labels to the packages that were sent to the defendant.

## VII.  THERE WAS SUFFICIENT EVIDENCE THAT THE DEFENDANT FAILED TO SUPPLY THE REQUISITE INFORMATION TO THE FREIGHT FORWARDERS IN ORDER TO COMPLETE THE SHIPPING PAPERS, AS CHARGED IN COUNT 10

### A.  The Defendant Lied to the Freight Forwarders

Through the testimony of Messrs. Ming and Yee and the Power of Attorney Agreement, the evidence established that the freight forwarder relied on the defendant to provide information about the contents of the shipment so that the freight forwarder knew how to properly send it.  One of the ways the defendant did that was to provide the freight forwarder with invoices that identified the specific items that the defendant wanted to send on behalf of MedChem.  Here, the defendant provided the freight forwarder with an invoice that affirmatively misrepresented the shipment – the defendant specifically stated that there were no hazardous materials in the shipment.  As a result of the defendant's false statement, the freight forwarder had no reason to prepare any shipping papers.

Mr. Yee testified that when the freight forwarder knew about hazardous materials because they

were shipped directly from the manufacturer to WAOS, they arranged to have them properly transported with shipping papers or they gave the hazardous materials to the defendant and told him that WAOS did not want to handle the hazardous materials.  Moreover, the evidence demonstrated that the defendant had two motives to conceal this information from the freight forwarder – as the defendant himself expressed to Agent Herren, concealment of the hazardous materials would expedite customs processing in Saudi Arabia and as the defendant's emails and documents showed, shipping hazardous materials was expensive and cut into MedChem's profitability (Ex. 449 (Comments and Recommendations document), Ex. 451 (email regarding export packaging costs), and Ex. 362 (expansion plan).

Finally, the defendant provided the freight forwarder with the hazardous materials in boxes that contained no hazardous material labeling and thus no way for the freight forwarder to know that there were hazardous materials inside, which would necessitate the preparation of shipping papers.

### B.      The Defendant Offered the Shipment for Transportation.

The defendant argues that the subject shipment was never "offered for transportation" and therefore is not guilty of Count 10.  However, the evidence presented at trial established that the defendant provided this shipment to the freight forwarder together with express instructions to ship it via air to Saudi Arabia.  Those acts constitute an offer for transportation.  The defense does not and cannot parse the relevant C.F.R. sections to demonstrate that this conduct failed to satisfy an offer for transportation under those regulations, and therefore the defendant's argument fails.

## VIII.   THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH THAT THE DEFENDANT ACTED "WILLFULLY" IN FAILING TO FILE SHIPPING PAPERS, AS CHARGED IN COUNT 10

There was sufficient evidence of defendant's willfulness with respect to Count 10.  As set forth above, the defendant provided the freight forwarder with invoices that falsely represented that the shipment contained no hazardous materials, and the defendant provided the freight forwarder with the hazardous materials in boxes that had no hazardous material labels.  Moreover, the defendant knew what shipping papers were from his prior instances of signing them for past ocean vessel shipments and he knew that the freight forwarder would make him sign them if they were aware of the presence of

GOVERNMENT'S OPPOSITION TO RULE 29 MOTION
CR11-0811  EMC

1    hazardous materials.  These facts are more than sufficient to establish willfulness.

2    **IX.     THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH THAT THE DEFENDANT
        OFFERED THE SHIPMENT FOR TRANSPORTATION WITHOUT PROPER LABELS**

3
4              For the reasons set forth in response to arguments VII and VIII above, there was sufficient

5    evidence that the defendant offered the shipment for transportation without proper labels.  It is also

6    worth noting that the defense overlooks the evidence relating to the defendant's knowledge of the

7    contents of this shipment and reasonable inferences that can be drawn from it.  As the defendant

8    admitted to Agent Herren, he oversaw the preparation of this shipment, and he was directly involved in

9    procuring the items from the manufacturer and receiving the sulfuryl chloride from his neighbor.  In

10   fact, the recorded phone calls with Sigma demonstrated that he was active in looking to ensure the items

11   he ordered (including chloroacetonitrile) were received at MedChem – his years in the business proved

12   him to be quite knowledgeable.

13
14   **X.      THE DEFENDANT ACTED WILLFULLY IN OFFERING THE SHIPMENT FOR
        TRANSPORTATION WITHOUT PROER LABELS, AS CHARGED IN COUNTS 11 – 19**

15
16             For the reasons set forth in response to argument VIII, there was sufficient evidence of

17   defendant's willfulness with respect to Counts 11 through 19.

18   **XI.     THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH THAT THE DEFENDANT
        ATTEMPTED TO SMUGGLE GOODS, AS CHARGED IN COUNTS 21 AND 22**

19
20             The defendant repeats his prior assertions that a violation of 18 U.S.C. § 554(a) requires proof of

21   a violation of a regulation or law relating export.  The Court has already considered and rejected this

22   argument in the context of the jury instructions (Dock. No. 114) and the Court should do so again here

23   for the very same reasons.

24

25

26   //

27   //

28   GOVERNMENT'S OPPOSITION TO RULE 29 MOTION
     CR11-0811  EMC

1

**CONCLUSION**

2        For all of the reasons stated above, the government respectfully requests that the Court deny the

3    defendant's Rule 29 Motion for Acquittal in its entirety.

4

5    DATED:  August 14, 2013            Respectfully submitted,

6                                       MELINDA HAAG
                                        United States Attorney
7

8                                              /S/

9                                       _____

10                                      PETER B. AXELROD
                                        BRIAN J. STRETCH
11                                      Assistant United States Attorneys

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S OPPOSITION TO RULE 29 MOTION
CR11-0811  EMC
                                        13